not within the exception. A herd of elephants cannot be fairly characterized as a herd of zebras simply because one zebra is traveling with the elephants. By treating multi-purpose PTO as defined in the PayFlex policy as the equivalent of vacation leave simply because vacation is one of the purposes for which it can be used, the majority's reasoning permits the exception to swallow the rule.

Because I would hold that PayFlex's PTO is not vacation leave within the meaning of § 48-1229(4), I would find that the employees were not entitled to recover attorney fees under § 48-1231. For these reasons, I would reverse the judgment of the district court in each of these consolidated cases and remand the causes with directions to reverse the judgments of the county court and remand with directions to dismiss.

HEAVICAN, C.J., and CASSEL, J., join in this dissent.

---

WILLIAM JERRY SMITH, APPELLANT, V. MARK
CHRISMAN TRUCKING, INC., APPELLEE.
___ N.W.2d ___

Filed May 3, 2013.    No. S-12-754.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.
2. ____: ____. With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination.
3. **Statutes: Legislature: Intent.** A legislative act operates only prospectively and not retrospectively unless the legislative intent and purpose that it should operate retrospectively is clearly disclosed.
4. **Statutes: Time.** Statutes covering substantive matters in effect at the time of the transaction or event govern, not later enacted statutes.
5. ____: ____. Procedural amendments to statutes are ordinarily applicable to pending cases, while substantive amendments are not.

6. **Statutes: Words and Phrases.** A substantive right is one which creates a right or remedy that did not previously exist and which, but for the creation of the substantive right, would not entitle one to recover. A procedural amendment, on the other hand, simply changes the method by which an already existing right is exercised.

Appeal from the Workers' Compensation Court: Michael K. High, Judge. Affirmed.

Michael W. Meister for appellant.

Darla S. Ideus and Robert B. Seybert, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, Miller-Lerman, and Cassel, JJ.

Miller-Lerman, J.

## NATURE OF CASE

William Jerry Smith, appellant, suffered an accident arising out of and in the course of his employment on October 23, 2007. Smith filed this action in the Workers' Compensation Court on February 28, 2012, against his employer, Mark Chrisman Trucking, Inc., appellee, seeking relief under an amended version of Neb. Rev. Stat. § 48-121 (Reissue 2010). Section 48-121(3) was amended by 2007 Neb. Laws, L.B. 588, and Smith alleged that he was entitled to benefits calculated on the basis of the loss of earning capacity pursuant to this amendment. The Legislature specified that the operative date of the L.B. 588 amendment to § 48-121(3) was January 1, 2008. The Workers' Compensation Court concluded that the amendment to § 48-121(3) was substantive rather than procedural and that because Smith's accident and injuries occurred prior to the operative date of the amendment, Smith could not recover for a loss of earning capacity thereunder. Thus, the court granted Mark Chrisman Trucking's motion for summary judgment and overruled Smith's motion for summary judgment. Smith appeals. We agree with the Workers' Compensation Court's analysis of the amendment to § 48-121(3) and, accordingly, affirm.

## STATEMENT OF FACTS

The parties in this case stipulated to the following facts:

1. [Smith] suffered an accident arising out of and in the course of his employment on October 23, 2007. Said accident caused a crush injury to [Smith's] left heel, injury to his right shoulder, and fractured ribs on the right. Sufficient notice was provided to [Mark Chrisman Trucking].

2. [Smith's] average weekly wage at the time of said accident was $540.60. As a result of the foregoing accident and injuries, [Smith] was temporarily totally disabled from and including October 24, 2007, through August 12, 2008, for which [Mark Chrisman Trucking] has paid [Smith] all indemnity benefits owed.

3. As a result of the foregoing accident and injuries, [Smith] was assigned a 1% impairment to the left lower extremity and an 11% permanent impairment to the right upper extremity and no further treatment was recommended. [Smith] was assigned no additional permanent impairment due to the fractured ribs and no further treatment is recommended for the fractured ribs.

4. [Mark Chrisman Trucking] has compensated [Smith] for all permanent impairment ratings set forth above pursuant to the schedule for scheduled member injuries set forth at Neb. Rev. Stat. § 48-121(3).

5. There is vocational evidence that [Smith's] loss of earning power due to his injuries to two scheduled members is 30%. [Mark Chrisman Trucking] disputes this.

6. All medical bills incurred by [Smith] due to the foregoing accident and injuries have been paid by [Mark Chrisman Trucking].

7. Following the accident and injuries referenced herein, [Smith] returned to work for a different employer as a truck driver and is not entitled to vocational rehabilitation services.

8. The sole issue for the court's determination is whether Laws 2007, LB 588 adding the third paragraph in subsection (3) of § 48-121, set forth below, applies to the accident occurring on October 23, 2007. The relevant

portion of § 48-121(3) provides as follows: "If, in the compensation court's discretion, compensation benefits payable for a loss or loss of use of more than one member or parts of more than one member set forth in this subdivision, resulting from the same accident or illness, do not adequately compensate the employee for such loss or loss of use and such loss or loss of use results in at least a thirty percent loss of earning capacity, the compensation court shall, upon request of the employee, determine the employee's loss of earning capacity consistent with the process for such determination under subdivision (1) or (2) of this section, and in such a case the employee shall not be entitled to compensation under this subdivision."

9. If the court finds this statutory provision applies to the accident occurring October 23, 2007, a factual issue exists as to the extent of [Smith's] loss of earning power and whether he is otherwise entitled to compensation based upon a loss of earning power. If the court finds this statutory provision does not apply to the accident occurring on October 23, 2007, an Award may be entered pursuant to the terms of this stipulation.

The statutory language in paragraph 8 of the stipulation is a part of § 48-121(3) and was added to the statute by L.B. 588. In § 6 of L.B. 588, the Legislature provided that the operative date for the section of L.B. 588 at issue was January 1, 2008.

The language under consideration was first introduced as 2007 Neb. Laws, L.B. 77, and the Introducer's Statement of Intent reads:

LB 77 relates to the Nebraska Workers' Compensation Act and would change disability compensation provisions. Under current law, if a worker sustains an injury to multiple members, he or she is limited to the compensation provided in the schedule contained in section 48-121 of the Nebraska Workers' Compensation Act. LB 77 would give to the Nebraska Workers' Compensation Court the discretion to award a loss of earning capacity in an appropriate case involving loss of use of multiple members.

Committee on Business and Labor, 100th Leg., 1st Sess. (Feb. 12, 2007). L.B. 77 was later inserted into L.B. 588 and finally appears as part of § 48-121(3).

Other than the amendment at issue, the portions of § 48-121(3) then and now provide for compensation based on designated amounts for scheduled member injuries, but no loss of earning capacity. The amendment provides for the loss of earning capacity at the court's discretion where there is a loss or loss of use of more than one member which results in at least a 30-percent loss of earning capacity.

On February 28, 2012, Smith filed this action in the Workers' Compensation Court against his employer, Mark Chrisman Trucking, alleging that he was entitled to benefits based on his loss of earning capacity under the amendment to § 48-121(3) created by L.B. 588. The Workers' Compensation Court filed its order on July 30, 2012, which granted Mark Chrisman Trucking's motion for summary judgment and denied Smith's motion for summary judgment, thus denying Smith a loss of earning capacity recovery. The court concluded that the amendment to § 48-121(3) was substantive and that such amendment created a "right or remedy that did not previously exist and which, but for the creation of the substantive right, would not entitle [Smith] to recover under this amendment to § 48-121(3)." Therefore, the court determined that because Smith's accident and injuries occurred prior to the operative date of the amendment to § 48-121(3), the amendment to § 48-121(3) did not apply to Smith.

Smith appeals.

## ASSIGNMENT OF ERROR

Smith claims, restated, that the Workers' Compensation Court erred when it granted Mark Chrisman Trucking's motion for summary judgment, thus denying Smith the opportunity to seek benefits based upon a loss of earning capacity.

## STANDARDS OF REVIEW

[1] A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in

excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Visoso v. Cargill Meat Solutions, ante* p. 272, 826 N.W.2d 845 (2013).

[2] With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *Id.*

## ANALYSIS

At issue in this appeal is whether the portion of § 48-121(3) amended by L.B. 588 applies to this case. Smith claims that the Workers' Compensation Court erred when it granted Mark Chrisman Trucking's motion for summary judgment, thus denying Smith the opportunity to seek recovery based on a loss of earning capacity. The Workers' Compensation Court determined that the amendment to § 48-121(3) was substantive rather than procedural and that therefore, Smith could not recover under the amendment because his accident occurred prior to the operative date of the amendment. We agree with the reasoning of the Workers' Compensation Court, and therefore, we find no merit to Smith's assignment of error.

Section 48-121(3) generally provides the manner by which a worker is compensated for the loss or loss of use of a scheduled member. The portion of § 48-121(3) at issue in this case provides:

> If, in the compensation court's discretion, compensation benefits payable for a loss or loss of use of more than one member or parts of more than one member set forth in this subdivision, resulting from the same accident or illness, do not adequately compensate the employee for such loss or loss of use and such loss or loss of use results in at least a thirty percent loss of earning capacity, the compensation court shall, upon request of the employee, determine the employee's loss of earning capacity consistent with the process for such determination under subdivision (1) or (2) of this section, and in such a case

the employee shall not be entitled to compensation under this subdivision.

This portion of § 48-121(3) provides for the potential recovery based on a loss of earning capacity and was added to the statute by L.B. 588.

[3,4] Generally, legislation that is passed takes effect 3 calendar months after the Legislature adjourns, see Neb. Const. art. III, § 27, unless the Legislature evidences otherwise. See, *Proctor v. Minnesota Mut. Fire & Cas.*, 248 Neb. 289, 534 N.W.2d 326 (1995); *No Frills Supermarket v. Nebraska Liq. Control Comm.*, 246 Neb. 822, 523 N.W.2d 528 (1994); *Young v. Dodge Cty. Bd. of Supervisors*, 242 Neb. 1, 493 N.W.2d 160 (1992). We have observed that a legislative act operates only prospectively and not retrospectively unless the legislative intent and purpose that it should operate retrospectively is clearly disclosed. *Id.* See, also, *In re Interest of Clifford M. et al.*, 261 Neb. 862, 626 N.W.2d 549 (2001). Statutes covering substantive matters in effect at the time of the transaction or event govern, not later enacted statutes. See, *Proctor v. Minnesota Mut. Fire & Cas., supra*; *No Frills Supermarket v. Nebraska Liq. Control Comm., supra*; *Young v. Dodge Cty. Bd. of Supervisors, supra*.

In *Young*, we observed that the statutory language reflecting the amendment under consideration expressly provided the operative date of the amendment, thus evidencing the legislative intent that the amendment should apply to the type of transactions at issue prospectively and not retrospectively. We reasoned that

> [q]uite apart from the [transaction date at issue], the express language of [Neb. Rev. Stat.] § 39-1716 (Reissue 1988) does not evidence an intent for retroactive application of the statute, but evidences a legislative intent that the 1982 amendment of § 39-1716 apply prospectively, that is, apply to any real estate acquired after January 1, 1982.

*Young v. Dodge Cty. Bd. of Supervisors*, 242 Neb. at 6, 493 N.W.2d at 164. We determined in *Young* that the amended statute did not apply to the transaction that occurred prior to the amendment.

Although the text of the particular section in the present case does not expressly identify the operative date of the amendment, the analysis from *Young v. Dodge Cty. Bd. of Supervisors, supra*, applies. There is no dispute that the operative date of the amendment to § 48-121(3) was January 1, 2008. In § 6 of L.B. 588, the Legislature specified that the section of the bill pertaining to the amendment to § 48-121(3) at issue in this case was to "become operative on January 1, 2008." The Legislature has expressed no intent that the amendment apply retroactively, and we decline to do so.

[5,6] The central issue in this appeal is the applicability of the identified amendment to § 48-121(3) to Smith's claim. As we observed in *Kratochvil v. Motor Club Ins. Assn.*, 255 Neb. 977, 984, 588 N.W.2d 565, 572 (1999): "We have often had to deal with new amendments to existing legislation in order to establish whether the amendment applied retroactively . . . ." The critical question can turn on whether the amendment was substantive or procedural. *Id.* Procedural amendments to statutes are ordinarily applicable to pending cases, while substantive amendments are not. *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012). This is because a substantive right is one which creates a right or remedy that did not previously exist and which, but for the creation of the substantive right, would not entitle one to recover. *Harris v. Omaha Housing Auth.*, 269 Neb. 981, 698 N.W.2d 58 (2005). A procedural amendment, on the other hand, simply changes the method by which an already existing right is exercised. *In re Interest of Karlie D., supra*.

Before it was amended, § 48-121(3) provided that a worker could receive compensation for injuries to members based on the schedule set forth in that subsection, but a worker could not receive compensation for the loss of earning capacity attributable to scheduled member injuries. Thus, for example, in *Jeffers v. Pappas Trucking, Inc.*, 198 Neb. 379, 385, 253 N.W.2d 30, 33-34 (1977), we stated that

> "it was clearly the intent of the Legislature to fix the amount of the benefits for loss of specific members under subdivision (3), section 48-121, R. S. Supp., 1963, without regard to the extent of the subsequent disability

suffered with respect to the particular work or industry of the employee."

Since the amendment to § 48-121(3), however, a worker can now receive compensation for the loss of earning capacity if, in the court's discretion, compensation as set forth in § 48-121(3) would not adequately compensate the worker and where there is a loss or loss of use of more than one member resulting from the same accident which results in at least a 30-percent loss of earning capacity. Thus, the amendment to § 48-121(3) created a new remedy that did not previously exist under the statute and the amendment is substantive not procedural. Because the amendment is substantive, as a matter of law, we conclude it applies prospectively, not retrospectively. See, *Visoso v. Cargill Meat Solutions, ante* p. 272, 826 N.W.2d 845 (2013); *Young v. Dodge Cty. Bd. of Supervisors*, 242 Neb. 1, 493 N.W.2d 160 (1992).

Because Smith's accident occurred prior to the operative date of the amendment, the amendment is inapplicable to Smith's action. The Workers' Compensation Court did not err when it reached this conclusion and granted Mark Chrisman Trucking's motion for summary judgment.

## CONCLUSION

Because the amendment to § 48-121(3) created by L.B. 588 does not apply to Smith's action, he cannot recover for an alleged loss of earning capacity on this basis. We determine that the Workers' Compensation Court did not err when it granted Mark Chrisman Trucking's motion for summary judgment and denied Smith's motion for summary judgment.

AFFIRMED.

MCCORMACK, J., participating on briefs.